## GEE, Respondent, v. ST. LOUIS & GULF RAILWAY COMPANY, Appellant.

### St. Louis Court of Appeals, January 22, 1907.

#### (Opinion by Bland, P. J.)

1. RAILROADS: Fencing Track: Trespasser. Under section 1105, Revised Statutes of 1899, if any person not connected with or employed upon a railroad shall go upon the track, he is a trespasser and cannot recover for damages incurred by reason thereof, whether the right of way is fenced or not.

2. ——: ——: ——: Prima Facie Case. In an action for double damages under section 1105, where the evidence showed the plaintiff was driving a push car along the railroad track and leading his horses and on the approach of a train, took his horses some distance from the right of way and left them standing unhitched, while he returned to remove the push car, when the horses becoming frightened at the train ran upon the track and were killed; it was not shown whether the horses were accustomed to trains or were liable to be frightened by them, a demurrer to the evidence on the ground that plaintiff was guilty of contributory negligence in leaving his horses unhitched was properly overruled.

3. ——: ——: ——: Jury Question. Whether the plaintiff was guilty of contributory negligence in leaving his horses thus unhitched, was a question for the jury and an instruction authorizing a verdict for the defendant if the plaintiff knew the horses would be likely to become frightened and left them unhitched as indicated, should have been given.

#### (Concurring Opinion by Nortoni, J.)

4. ——: ——: ——: ——. While the railroad company owed the plaintiff the duty of fencing its track, the plaintiff owed the railroad company the duty of exercising ordinary care with respect to the safety of his horses, and whether he did so, in view of the approaching train, was a question which should have been submitted to the jury.

Appeal from New Madrid Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*L. F. Parker* and *Moses Whybark* for appellant.

(1) The court should have sustained the demurrer to the evidence as to the second count in the petition. The plaintiff was not connected with the railroad nor employed by it, and under the statute was a trespasser on the track when the injury took place. R. S. 1899, sec. 1105. And in addition he was guilty of such negligence as to bar him from recovery, and the demurrer ought to have been sustained for that reason. Prewitt v. Eddy, 115 Mo. 283; Clem v. Railroad, 72 Mo. App. 433; Milburn v. Railroad, 86 Mo. 104; Corcoran v. Railroad, 105 Mo. 399. (2) And this rule applies in Missouri and elsewhere in stock cases. The plaintiff can not recover where he exposes his animals to danger, which he willfully did in this case. Patton v. Railroad, 14 Mo. App. 589; Bowman v. Railroad, 85 Mo. 538-9; Keeney v. Oregon River & Nav. Co., 19 Oregon 292, 24 Pac. 234; Moses v. Railroad, 8 L. R. A. 135, 18 Oregon 385.

*J. V. Conran* for respondent.

The defendant railroad company, under the statute of the State, was required to erect, and maintain, good and lawful fences along the sides of its said road at the point where the animals of plaintiff entered upon the same and were killed by the engine and cars of defendant. It is conceded that the defendant had utterly ignored the provisions of the law and was in fact liable under the law. Instruction given for the respondent met the issue fully and fairly and covered the questions in the cause as raised by pleading and testimony. R. S. 1899, sec. 1105; Prather v. Railroad, 84 Mo. App. 91.

BLAND, P. J.—The action is for double damages. There are two counts in the petition. The first one alleges, in substance, that on August 26, 1903, plaintiff's cow, of the value of forty dollars, strayed upon defendant's railroad track at a point where it was required by law to maintain fences along the sides of its right of way, which it had neglected to do, and that the cow was struck and killed by defendant's locomotive and train. The second count alleges the killing of two of defendant's horses of the value of three hundred dollars, on December 19, 1903, by defendant's locomotive and train, which horses got upon defendant's railroad track at a point where it was required to maintain fences, but had neglected so to do. To the first count, the answer was a general denial; to the second, a general denial and the following affirmative defense:

"Defendant, for further answer to said second count and for new matter, states that plaintiff's animals were injured and killed by the negligence and carelessness of plaintiff, in voluntarily taking said animals on the right of way and carelessly and negligently exposing them to danger of being thereby hurt on the track. And but for this carelessness and negligence of plaintiff his animals would not have been injured and killed, as he alleges they were. And, having fully answered, prays for judgment against plaintiff as to the second count."

The replication of plaintiff was a general denial to the new matter set up in the answer.

The verdict was for plaintiff on both counts. His damages were assessed at forty dollars on the first count and three hundred dollars on the second. The damages were doubled by the court and a judgment rendered for six hundred and eighty dollars, from which defendant appealed.

1. While the appeal is from the judgment on both counts, no complaint is made against the verdict and judgment on the first one. Plaintiff was the only wit-

ness who testified in the case. A summary of his evidence is printed in defendant's statement which is and is conceded by plaintiff's counsel to be fair and correct. It is as follows:

"The plaintiff testified that on the seventeenth of December, 1903, he was hunting his wild hogs in the swamp and took one of them and placed it on a push car, which he found by the side of defendant's railroad track, for the purpose of conveying the hog to his home. That a day or two before the section foreman told him he might use the push car for that purpose, but on the day of the injury he did not see the section foreman until after the injury occurred. He placed the push car on the track about a mile and one half below his house late in the evening about dark, and he and his companion got off the horses, and his companion pushed the car on the railroad track in the direction of his home while he walked and led the horses by the side of it. He was familiar with the track, which was straight for some miles where the injury occurred, and he saw the train coming nearly a mile before the injury occurred. On his way he passed the section house, but the section foreman was not at home, but his wife told him he had gone to Parma. The horses were fractious, game and high strung, but gentle horses, and he would ride them every day. When he saw the train approaching he took the horses off of the right of way, a distance of about one hundred feet, and tied their halters together, but did not hitch them, as he was in the habit of jumping off and leaving them that way, and without leaving any one to hold or to watch them he went back to the railroad to assist his companion in taking the car off, and while doing so, the horses became frightened by the train and ran back in front of it and were injured.

"The time was short between the time he took the horses off of the right of way and when they ran back. The train was a passenger train. It was his intention to

take the horses off the right of way and remove the push car from the track and after the train passed to replace the push car and bring his horses back and go on home with his hog. That the horses ran back the same way he had led them off; one came back nearly where he took it off and the other one nearly a rail further south of that point, and both were struck on the track by the train. He had been over the track oftentimes and was familiar with the ground. The railroad was not fenced at any point on the line where he used the car, but it was uninclosed land, and there was no public road crossing, switch or town near it."

At the close of the evidence, defendant offered an instruction in the nature of a demurrer to plaintiff's evidence on the second count of the petition. The refusal of the court to grant this instruction is assigned as error. It is insisted that plaintiff and his horses were trespassers upon the defendant's railroad track and right of way. After a railroad company has complied with the provisions of section 1105, Revised Statutes 1899, in respect to fencing its right of way, it is provided by said section that, "If any person shall ride, lead, or drive any horses or any other animals within such fences and guards other than at public road or street crossings, without the consent of the corporation, he shall, for every such offense, forfeit and pay," etc. The last clause of the section provides: "If any person not connected with or employed upon the railroad shall walk upon the track or tracks thereof, except where the same shall be laid across or along a publicly traveled road or street, or at any crossing, as hereinbefore provided, and shall receive harm on account thereof, such person shall be deemed to have committed a trespass in so walking upon said track in any action brought by him on account of such harm against the corporation owning such railroad, but not otherwise." This clause applies whether or not the corporation has erected fences, and a person

on the track, without the consent of the corporation, where the road does not cross a public road or street, would be a trespasser; and if plaintiff's horses had been struck and killed while he was leading them on the track, he would have no cause of action on the second count of his petition. The double-damage clause of section 1105, supra, provides that until fences shall be made and maintained, the corporation "shall be liable in double the amount of damages which shall be done by its agents, engines or cars to horses, cattle, mules or other animals on said road." Under this clause, it is immaterial from whence come the animals injured on the road, if they, unrestrained, go upon the road by following their own instincts, or were caused to go upon the road through fright or other causes not produced or contributed to by the owner.

Plaintiff removed his horses from the track, the place of danger where he had been leading them, beyond the right of way, at a distance from the track and where they were out of danger of the train. But he left them there unhitched. Plaintiff testified that they were "fractious, game and high strung, but gentle horses," and he rode them every day. If he had tied their halter reins securely to a limb or sapling (they were in the woods) instead of tying their reins together, they would not have gone upon the track, hence the question on the demurrer to the evidence is, was plaintiff, as a matter of law, guilty of negligence in failing to securely hitch his horses? The horses were fractious and spirited, but gentle. It is not shown by the evidence whether or not they were accustomed to railroad trains, or were or were not liable to be frightened by the puffing and rumbling noise of a locomotive and train in motion. If they were, and plaintiff knew it, it might be proper to say, as a matter of law, that he was guilty of negligence in leaving them unsecured within one hundred feet of the track, when he knew the train was coming and would pass in a few sec-

.onds. If they were not liable to be frightened by the train, then there would be but slight evidence of his negligence, and we conclude the court did not err in refusing defendant's demurrer to plaintiff's evidence on the second count.

2. Defendant asked and the court refused the following instruction:

"5. The court further instructs you that if you find from the evidence that the plaintiff took his animals on the right of way of the defendant's railroad, and brought them on and along the same while he was using a push car on the defendant's railroad track, but on the approach of a train, they (the plaintiff) knew, would become or likely become frightened thereby, and to protect them he took them off of the right of way, then it became his duty to exercise care to hold them there in safety until the train passed, and if he failed to do so, and they broke loose and ran back on the right of way, and on the track, and were struck by the train, then he can not recover in this action on the second count of the petition."

While, in this State, except in counties which have adopted the local option law in respect to stock running at large, the owner is not required to keep his stock within his own enclosures, and may let them run at large, he cannot "turn them loose, regardless of consequences," or at a place where danger to them is constant and imminent and when injury occurs to them, as a consequence of his conduct, though defendant may not have been free from fault, escape the charge of negligence or want of ordinary care. [Moses v. Railroad, 8 L. R. A. (Ore.) l. c. 142; Patton v. Railroad, 14 Mo. App. 589.] If the plaintiff negligently exposed his horses to danger by leaving them unhitched, in the circumstances related by him, his negligence directly contributed to their injury, and he cannot recover. The disposition of the horses and the insecure and unsafe condition in which plaintiff

left them near the track, when a passenger train was near by and rapidly approaching, we think is evidence tending to prove negligence on the part of plaintiff, and that defendant was entitled to have this evidence submitted to the jury by the instruction as asked, hence we conclude the court erred in refusing the instruction. For this error the judgment on the second count is reversed and the cause remanded for new trial on said second count; and the circuit court is directed to enter a separate judgment on the first count in plaintiff's petition for double the amount of damages assessed by the jury on said count. All concur. *Goode, J.,* in result; *Nortoni, J.,* in separate opinion.

### SEPARATE CONCURRING OPINION.

NORTONI, J.—I am of the opinion that the plaintiff, under ordinary circumstances, could have been guilty of no negligence in turning his horses loose on the commons a hundred feet away from the right of way, even though such right of way was unfenced, inasmuch as the Supreme Court and Courts of Appeals of this State have repeatedly held that "the owner of cattle is guilty of no negligence in permitting his stock to run at large whether in the vicinity of a railroad track or remote from one." [Turner v. K. C., etc., Ry. Co., 78 Mo. 578; Davis v. Hannibal & St. Joe Ry. Co., 19 Mo. App. 425-431; Kirkpatrick v. Illinois South'n Ry. Co., 120 Mo. App. 416, 96 S. W. 1036.] But this is not an ordinary case. Here the plaintiff led his horses upon the track for some distance until they had at least become familiar with it, and in the very face of an approaching train, turned them loose in near proximity to what seemed to be impending danger. It was not unnatural for them, under the circumstances, to return to the track. While the defendant owed him the positive statutory duty of fencing its track in order to keep his horses from going

thereon, at the same time (while enjoying the privilege of turning his horses loose at the risk of the railroad, generally speaking) he owed the railroad company the duty of exercising ordinary care with respect to their safety under the circumstances, and in full view of the rapidly approaching train. [See Milburn v. K. C., etc., Ry. Co., 86 Mo. 104.] I am therefore persuaded that the question whether he exercised such care as an ordinarily prudent person would have exercised under the circumstances of the case, was for the jury and therefore concur in reversing and remanding the cause on the second count.